UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOHN C. SPITZ,

                 Appellant,

v.

DONALD F. NITSCHKE,
KRISTAL R. NITSCHKE, and
J & T LENDING LLC,

                 Appellees.

Case No. 14-CV-1149-JPS

ORDER

---

This bankruptcy appeal arises from three of Judge Susan V. Kelley's orders in Donald F. Nitschke and Kristal R. Nitschke's (collectively "the Debtors") Chapter 7 bankruptcy case. Those orders: (1) denied the motion of the Trustee to sell property of the Estate pursuant to 11 U.S.C. § 363(b) (Docket # 1-3 at 137); (2) granted relief from the automatic stay to permit state court proceedings, *id.* at 139-40; and (3) granted the Debtors' motion for abandonment of property of the Estate, *id.* at 145-147.

Notably, the Chapter 7 Trustee did not appeal these orders; instead, John C. Spitz ("Spitz"), a prospective buyer[1] of property of the estate brings this appeal. The Court will dismiss this appeal because Spitz lacks standing to appeal the bankruptcy court's orders.

1.     BACKGROUND

The genesis of this case is the falling out of three business partners, Donald Nitschke ("Nitschke"), Spitz, and Timothy Zignego ("Zignego"). (Docket #5 at 7); (Docket #4 at 8). In 2006, the three business partners

---

[1]Spitz, in his reply brief, argues that he was "more than [a] mere bidder" or prospective purchaser; he alleges that he also brings this appeal as a secured creditor. (Docket #6 at 5).

intended to buy three apartment buildings and convert them to condominiums. *Id.* To do so, they created three LLCs (collectively, "the Oak Leaf LLCs"), one for each apartment building they purchased in Oak Creek, Wisconsin. *Id.* The Oak Leaf LLCs borrowed just shy of five million dollars from Park Bank to purchase the apartment buildings. (Docket #1-3 at 157-158). Ultimately, the Oak Leaf LLCs had four notes from Park Bank: a note on each of the three buildings and an additional $1.5 million note that the bank required after the economic downturn in 2007 and 2008. *Id.* at 157. To secure the $1.5 million note the bank required additional collateral from each business partner. *Id.* Nitschke, Spitz, and Zignego each pledged property valued at $500,000.00 to satisfy the bank, *id.*; and, as relevant here, Nitschke's pledge was 240 acres of hunting land he owned in Shawano County, Wisconsin, together with a cabin located on the property (hereinafter, "the Aniwa Property"). (Docket #5 at 4).

In late January 2014, the Park Bank loans were coming due and the bank demanded a $700,000.00 pay down in order to renew the loans. (Docket #5 at 8-9). At a mid-January meeting between Spitz, Zignego, and Nitschke, they voted to obtain the money necessary for the pay down by borrowing from themselves; they also decided to refinance the Park Bank notes with a different bank.[2] *Id.* Nitschke, however, declined to put in new capital. (Docket #4 at 9).

Without Nitschke, Spitz and Zignego forged ahead and established J & T Lending LLC ("J & T"); Spitz and Zignego fronted J & T the $700,000.00 for the pay down. *Id.* Thereafter, J & T refinanced the Oak Leaf LLCs using the $700,000.00 to buy out the Park Bank loan; J & T refinanced with Home

---

[2]Nitschke abstained from these votes. (Docket #5 at 9).

Federal. (Docket #1-3 at 161-62). As part of this refinance, J & T obtained the notes on the three apartment buildings, and the guarantees on the personal collateral that each member had put up to secure the $1.5 million Park Bank note. *Id.* One of those guarantees, as noted above, was Nitschke's pledge of the Aniwa Property.

Shortly after the refinance of the Oak Leaf LLCs, the Debtors filed a voluntary petition under Chapter 7. (Docket #1-2 at 1). The Debtors' schedules listed a fee simple interest in the Aniwa Property with a value of $593,000.00, subject to a secured claim of $535,000.00; the secured claim was listed as a mortgage lien held by Park Bank. *Id.* at 33. As discussed above, this lien was transferred to J & T upon the refinancing of the Oak Leaf LLCs. The Debtors' schedules also listed a $585,000.00 unsecured, nonpriority claim held by Spitz for "Judgment on Loans"; that judgment lien was against the Aniwa Property. *Id.* at 46.

On April 7, 2014, the Trustee filed a motion to sell the Aniwa Property, pursuant to 11 U.S.C. § 363(b). (Docket #1-2 at 113-16). The Trustee sought to sell the property to Spitz for $10,000.00 in a private sale. *Id.* Spitz would take the Aniwa Property subject to existing liens; namely, the $535,000.00 mortgage held by J & T lending, and the $585,000.00 judgment lien held by Spitz himself. *Id.* The sale would generate $8,250 of equity for the Estate, for the benefit of unsecured creditors. *Id.*

On April 18, 2014, the Debtors filed amended schedules, claiming a $25,450.00 wild card exemption in the Aniwa Property under 11 U.S.C. § 522(d)(5). (Docket #1-2 at 139). Since this exemption would swallow any profit from sale proposed by the Trustee, and the property was fully encumbered, the Debtors thereafter filed a motion to abandon the Aniwa Property pursuant to 11 U.S.C. § 554. *Id.* at 145-49. The Debtors also filed an

objection to the Trustee's motion to sell, arguing that selling the property would nullify their wild card exemption. *Id.* at 170. Subsequently, the Trustee objected to the Debtor's wild card exemption, *id.* at 176, and Spitz and the Trustee objected to the Debtors' motion to abandon the Aniwa Property. *Id.* at 243; (Docket #1-3 at 18-20).

On May 8, 2014, J & T filed a motion for relief from the automatic stay to allow it to take action under state law to enforce its interest in the Aniwa Property, pursuant to the mortgage lien it acquired after the refinance of the Oak Leaf LLCs. (Docket #1-2 at 189-91). In its motion, J & T asserted that the debt secured by the Aniwa Property was not the value of the mortgage lien of $535,000.00, but $4,795,797.91, which was the amount due on the notes held by J & T for the Oak Leaf LLCs. (*See* Docket #1-2 at 189-92). The Debtors objected to the motion for relief from stay because of the overvaluation of the lien against the Aniwa Property. (Docket #1-3 at 24). However, the Debtors did agree that the stay should be lifted so that a state court could resolve claims of "LLC ownership, loan collateral, mortgage, indemnification and contribution…that the Debtors wish[ed] to pursue" against J & T, Spitz, and Zignego. *Id.* at 25.

The Debtors were granted a discharge under 11 U.S.C. § 727 on June 13, 2014. *Id.* at 38. This included discharge of the judgment lien that Spitz held against the Aniwa Property in the amount of $585,000.00. *See In re Nitschke*, Case No. 14-20569 (Docket #87); *Spitz v. Nitschke*, Shawano County Circuit Court Case No. 2013TJ000006 (noting on the docket that the "Judgment Status" of Spitz's judgment lien against Nitschke and the Aniwa Property was "Satisf of judg due to bankrupt" and this occurred on August 6, 2014).

On August 5, 2014, the bankruptcy court held an evidentiary hearing to address the Trustee's motion to sell the Aniwa Property, the Debtors' motion to abandon the Property, and J & T's motion for relief from stay to pursue state court remedies. *Id.* at 151. Judge Kelley denied the Trustee's motion to sell, stating that the Debtors' objection to the sale "should be sustained" because the Aniwa Property "shouldn't be sold to Mr. Spitz with all these swirling, disputed unknowns as to what is the appropriate amount of encumbrance to J & T." *Id.* at 195. The bankruptcy court issued a formal order denying the Trustee's motion to sell on August 8, 2014. *Id.* at 138.

Judge Kelley granted J & T's motion for relief from the automatic stay to "get this all sorted out in state court." *Id.* at 195. In her formal August 10, 2014 order lifting the stay, the bankruptcy court stated that the stay should be terminated "so that, in an appropriate proceeding, a State Court can determine the amount of J & T's lien." *Id.* at 139. And, the order also stated that "[t]o the extent the State Court deems it appropriate, the stay is terminated to enable the State Court to order foreclosure or other remedies as to all or part of the Aniwa [p]roperty." *Id.* at 140.

Finally, Judge Kelley granted the Debtors' motion to abandon "except as to any surplus which may be remaining after the foreclosure sale" and "reserving [the Debtors']…rights[] to argue that that surplus is not property of the estate." *Id.* at 205. The formal order granting the Debtors' motion to abandon the Aniwa Property was entered on August 21, 2014; in it, the court stated that the motion was granted "subject to additional Order of the Court to protect the Bankruptcy Estate's interest in the Aniwa Property, if any." *Id.* at 146. The order went on to state that, "[i]n the event that the State Court determines the amount of J & T Lending's [l]ien is an amount that results in equity in the Aniwa [P]roperty above the Debtors' claimed exemptions, any

such surplus is not abandoned from the Bankruptcy Estate." *Id.* In addition the order stated that "the Court recognizes the right of the Debtors to argue that such a surplus (if any) was created post-petition and/or is property that is not included in the Bankruptcy Estate of the Debtors." *Id.*

Spitz filed a notice of appeal on August 20, 2014—which was later amended on August 26, 2014, to include the August 21, 2014 order granting the Debtors' motion for abandonment. S*ee id.* at 143. In Spitz's brief, he argues that the bankruptcy court abused its discretion by sustaining the Debtors' objection to the motion to sell; this was error, Spitz avers, because the Debtors had no standing—*i.e.,* no pecuniary interest in the Aniwa Property— to make such an objection. (Docket #4 at 11-16). Additionally, Spitz argues that the bankruptcy court abused its discretion by "not allow[ing] all parties to present evidence and make arguments" at the August 5, 2014 hearing on all three motions discussed above. *Id.* at 6, 16-18.

Regarding the denial of the Trustee's motion to sell, the relief Spitz requests is that this Court should "vacate[] [all three of the bankruptcy court's orders] and…remand[] with instructions to approve the Trustee's sale of the [E]state's interest in the Aniwa [P]roperty to Mr. Spitz." *Id.* at 16. Spitz argues, alternatively, that if this Court finds that the Debtors' objection to the motion to sell was properly sustained, the Court should nonetheless "vacate the orders of the bankruptcy court and remand with instructions to hold a new evidentiary hearing" where all parties are given an opportunity to present evidence and argue their position. *Id.* at 18.

2. ANALYSIS

This Court is granted jurisdiction to hear an appeal of a bankruptcy court's order under 28 U.S.C. § 158(a); that is, appeals of, *inter alia*, "final judgments, orders and decrees," or " interlocutory orders and decrees" if the

party has been granted leave of the court to appeal. *Id.* A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *See In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002); *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir. 1994).

2.1 Whether the Bankruptcy Court's Orders Were Final

To begin, while neither party addresses the jurisdiction of this Court in any detail, the Court will raise the issue *sua sponte*. *See Smoot v. Mazda Motors of Am.*, 469 F.3d 675, 678 (7th Cir. 2006) (noting that "federal courts are required to police their jurisdiction" which is a duty courts "are not at liberty to shirk"). The Court notes, first, that while Spitz filed a notice of appeal citing all three orders of the bankruptcy court, his arguments address solely the error of the bankruptcy court in denying the Trustee's motion to sell and the unfairness of the hearing regarding that motion. As such, the Court must determine whether the denial of the Trustee's motion to sell is a "final order" under § 158(a). *See In re Bank of New England Corp.*, 218 B.R. 643, 647 (1st Cir. BAP 1998) ("A decision is final if it 'ends the ligation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). If it is not—and thus it is an interlocutory order—Spitz's appeal could be dismissed for lack of jurisdiction, given that the appellant has not asked for the Court's leave to appeal and entertaining such appeals is discretionary. *See In re Riggsby*, 745 F.2d 1153, 1154 (7th Cir. 1984); *McCallan v. Hamm*, 502 B.R. 245, 248 (M.D. Ala. 2013).

Alas, determining whether Judge Kelley's order denying the Trustee's motion to sell is a final order is a complicated matter. *See Dutch Lake Knoll Holdings, LLC v. Sunnybrook Homeowners Ass'n, Inc.*, No. 13-CV-538, 2013 WL 3338783, at *1 (D. Minn. July 2, 2013) ("Although it is well established that an

order approving the sale of property of the bankruptcy estate is final, it is less clear whether an order denying approval of the sale of property is final.") (internal citations omitted). Now, to be sure, the Seventh Circuit has stated that "[o]rders approving or failing to approve the sale of a debtor's property are considered final decisions and are immediately appealable." *In re Sax*, 796 F.2d 994, 996 (7th Cir. 1986); *accord In re Vlaskek*, 325 F.3d 955, 961 (7th Cir. 2003) (quoting *In re Sax* for the same proposition, without analysis on the denial issue). However, as the *Dutch Lake* court notes, the Seventh Circuit's words were "without analysis" and other courts have held just the opposite. *See Dutch Lake*, 2013 WL 3338783, at *1 (concluding that the denial of a motion to sell is interlocutory); *Big Shanty Land Corp. v. Comer Props. Inc.*, 61 B.R. 272, 277 (N.D. Ga. 1985) (finding an order denying a debtor's motion to sell interlocutory (albeit without much analysis), and denying leave to appeal because such an order is a "'weak candidate for interlocutory review'") (quoting *Providers Benefit Life Ins. Co. v. Tidewater Grp., Inc.*, 22 B.R. 500, 506 (N.D. Ga. 1982)); *In re Buerge*, No. 11-20325, 2014 WL 1309694, at *8 n.59 (10th Cir. BAP Apr. 2, 2014) (unpublished) (noting that "an order denying approval of sale of property may be deemed interlocutory…"). The appellant's decision to appeal all three orders of the bankruptcy court adds another slight wrinkle, given that if a non-final order "is issued in conjunction with a final order *it becomes a final order.*" *In re Buerge*, 2014 WL

1309694, at *8 n.59. This begs the question: were Judge Kelley's other two orders final?[3]

To be sure, whether this Court has jurisdiction is a muddled issue. Nevertheless, the Court is inclined to agree with the *Dutch Lake* court that orders denying motions to sell are interlocutory. And, given the open-ended nature of Judge Kelley's other two orders, it is unlikely that those orders were final either.

While these jurisdictional failings alone would be sufficient to dismiss this appeal, the Court will assume it has jurisdiction and proceed to the parties' arguments for the sake of clarity and completeness. Proceeding to the parties' arguments, however, only makes it that much clearer that this appeal must be dismissed. This is so because, as will be discussed below, Spitz lacks standing to appeal *any of the bankruptcy court's orders.*

### 2.2 Spitz Lacks Standing to Appeal the Bankruptcy Court's Orders

Bankruptcy standing "is narrower than Article III standing." *In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010); *see also In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992) (noting that the standing requirement in bankruptcy "is more exacting than the requirements for general Article III standing"). "Because the Bankruptcy Code does not expressly define appellate standing, courts

---

[3]Of course, normally orders granting abandonment and relief from stay are final orders. But, when Judge Kelley issued those orders, she expressly noted their resolution was dependent on other matters; namely, determining whether there was indeed a surplus, and whether that surplus was property of the bankruptcy estate or a post-petition accrual. (*See* Docket #1-3 at 195, 205). This, in turn, required keeping the bankruptcy estate open while those matters were litigated in state court. Thus, whether the orders were final is not an easy question to answer. *Cf. In re McKinney*, 610 F.3d 399, 401-402 (7th Cir. 2010) (noting that in the bankruptcy context, courts "deal with the concept of 'flexible finality,'" but the law regarding the issue of finality lacks clarity, and "the hard part is figuring out what stage of these proceedings must be terminated for finality to attach").

have consistently applied a standard 'derived from former section 39(c) of the Bankruptcy Act of 1898, which permitted only a *person aggrieved* to appeal an order of the bankruptcy court.'" *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 641-42 (2d Cir. 1988)) (emphasis added) (internal quotation marks omitted); *see In re Harwald*, 497 F.2d 443, 444 (7th Cir. 1974).

To be a "person aggrieved" by a bankruptcy order, a party "must demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights." *In re DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir. 1992); *see also In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir. 1987) ("[T]he right of appellate review in bankruptcy proceedings has historically been limited to 'persons aggrieved,' *i.e.*, to those persons who rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court.") (quoting *In re Fondiller*, 707 F.2d 441, 442-43 (9th Cir. 1983)).

And, speculative harm is insufficient to confer standing. Rather, to be considered a "person aggrieved," an appellant must establish both "injury in fact as well as that the interest which he seeks to protect…is an interest which the Bankruptcy Act seeks to protect or regulate." *In re Harwald*, 497 F.2d at 444; *see also Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 289 (N.D. Ohio 1997) (noting that courts also apply the "zone of interest" test to determine bankruptcy standing, which "examines 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'") (quoting *Bennett v. Spear*, 520 U.S. 154, 163 (1997)).

"This rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does

not serve the interests of either the bankrupt's estate or its creditors." *In re El San Juan Hotel*, 809 F.2d at 154; *In re Andreuccetti*, 975 F.2d at 416-17; *In re Du Page Boiler Works, Inc.*, 965 F.2d at 297; *In re Carbide Cutoff, Inc.*, 703 F.2d 259, 264 (7th Cir. 1983).

In general, "absent some other meritorious ground for appeal," an appellant lacks standing to appeal if he is "merely an unsuccessful bidder and not an 'aggrieved person.'" *In re Broadmoor Place Invs., L.P.*, 994 F.2d 744, 746 n.2 (10th Cir. 1993); *In re Moran*, 566 F.3d 676, 681 (6th Cir. 2009) ("Generally, '[f]rustrated bidders do not have standing to object to the sale of property.'") (quoting *In re Squire*, 282 Fed. Appx. 413, 416 (6th Cir. 2008)); *Big Shanty Land Corp.*, 61 B.R. at 278 n.8 ("The Court agrees that normally a frustrated bidder lacks standing to object to a sale of assets.") (citing *In re NEPSCO, Inc.*, 36 B.R. 25, 26-27 (Bankr. D. Me. 1983)); *see In re Colony Hill*, 111 F.3d at 273; *In re CFLC, Inc.*, 89 F.3d 673, 675 (9th Cir. 1996).

This is so because "the provisions of the Bankruptcy Code regarding sales of property 'are intended to protect the creditors of such estates and not prospective purchasers'" and thus "unsuccessful bidders generally lack standing to challenge an order of sale under the zone of interests test." *Dick's Clothing & Sporting Goods*, 212 B.R. at 289 (quoting *In re HST Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991)); *In re NEPSCO*, 36 B.R. at 27 ("The Court finds nothing to indicate that prospective purchasers are within the zone of interests intended to be protected [by the bankruptcy statutes].").

Here, the appellees argue that Spitz lacks standing to appeal because he has "no ownership and no financial or security interest in the Aniwa Property" and, "[e]ven if [he] planned to buy the [property] from the Trustee, that fact would not create standing." (Docket #5 at 12). Spitz argues, conversely, that "[a]t the time the motion to sell was brought, [his] judgment

lien was in full force and effect" and thus the lien "gave [him] a significant interest as a secured creditor in the property." (Docket #6 at 4). And, the bankruptcy court's failure to approve the sale "caused Mr. Spitz direct harm by negatively affecting his secured status as a creditor in the Aniwa [P]roperty." *Id.* Thus, according to Spitz, he is "clearly an 'aggrieved person' with standing to appeal.'" *Id.*

The Court agrees with the appellees that Spitz lacks standing to appeal the bankruptcy court's denial of the Trustee's motion to sell. First, as merely a frustrated bidder, the cases noted above clearly lead to the conclusion that Spitz lacks standing. And, while Spitz argues that he was more than a bidder because he had a judgment lien against the property "[a]t the time the motion to sell was brought," (Docket #6 at 4), standing is not measured by the appellant's interests at the time a motion is filed, but by the effect of the bankruptcy court's order on the appellant's interests. And, Spitz's judgment lien was extinguished *before* the bankruptcy court ruled on the Trustee's motion to sell, so he had no pecuniary interest whatsoever. In addition, Spitz's argument that he was a *secured creditor*—whether or not he was—further undermines his position, given that sales are for the benefit of *unsecured creditors. See, e.g., In re Dockweiler*, No. 13-1157, 2014 WL 1273695, at *4 (9th Cir. BAP Mar. 28, 2014) (unpublished) ("A chapter 7 trustee may sell property under § 363, but such a sale is generally for the benefit of unsecured creditors and not for the benefit of secured creditors of the debtor.") (citing *In re Gallagher*, 283 B.R. 342, 344 (Bankr. M.D. Fla. 2002) and *In re Tobin*, 202 B.R. 339, 340 (Bankr. D.R.I. 1996)).

The same holds true for Judge Kelley's other two orders. Spitz lacks standing—and thus cannot appeal—the abandonment of a property he has no pecuniary interest in, and he surely cannot object to the court's order

granting J & T's motion for relief from the automatic stay since *he is a member of J & T*—whose motion it was—and that order could be argued to be advantageous to Spitz.[4]

As an aside, even if the Court were to proceed to the merits, the Court finds that the bankruptcy court did not abuse its discretion by denying the Trustee's motion to sell. As the court in *Big Shanty* noted, "[a]bsent clear justification,…it would seem unwise to second-guess a bankruptcy court's refusal to approve a sale of substantial assets under § 363(b)." 61 B.R. at 278. This is a high bar that Spitz cannot meet. Spitz's main contention is that the bankruptcy court abused its discretion by sustaining the Debtors' objection to the Trustee' motion to sell because the Debtors lacked standing to make such an objection. And, to be sure, the standing requirements noted above are equally applicable to Debtors—*i.e.,* to have standing to object, the Debtors must have a pecuniary interest in the Aniwa Property. But, Spitz's argument that the Debtors lacked a pecuniary interest in the property—and thus standing—lacks merit because the bankruptcy court left open the possibility that any surplus from the Aniwa Property might be a post-petition accrual. Thus, the Debtors had some pecuniary interest in the property.

### 2.3 Spitz's Allegation of an Unfair Hearing is Insufficient to Confer Standing

Now, the general rule that "unsuccessful bidders…are not considered to be aggrieved persons or to be within the zone of interests of the Bankruptcy Code for purposes of standing" is not without exceptions. *Dick's Clothing & Sporting Goods*, 212 B.R. at 289; *In re Colony Hill Assocs.*, 111 F.3d

---

[4] Indeed, after this appeal was filed, J & T foreclosed on the Aniwa Property. *See* Shawano Circuit Court Case No. 2014CV000215. The total amount of that foreclosure was $ 5,020,573.28. *Id.*

at 273 (noting that "the rule denying standing to unsuccessful bidders is not absolute" and collecting cases). "[C]ourts have recognized an exception in cases where the unsuccessful bidder challenges the underlying fairness of the sale." *Dick's Clothing & Sporting Goods*, 212 B.R. at 289; *see In re Moran*, 566 F.3d at 681-82 (noting "[a]n exception to [the] general rule…'where an unsuccessful bidder challenges the intrinsic structure of the sale because it is tainted by fraud, mistake, or unfairness'") (quoting *In re Squire*, 282 Fed Appx. at 416). As the Seventh Circuit has instructed:

> Courts…properly entertain suits challenging the equity of a bankruptcy sale transaction, on the assumption that sales tinged by fraud, mistake, or unfairness would generally result in an accepted bid below that which might have been expected in a fair, free market situation. Thus, when an unsuccessful bidder attacks a bankruptcy sale on equitable grounds related to the intrinsic structure of the sale, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and regulate.

*In re Harwald*, 497 F.2d at 444-45.

The fundamental problem with Spitz's attempt to sweep himself within this exception is that the bankruptcy court *denied* the Trustee's motion to sell, and thus any arguments about a transaction involving fraud, mistake, or unfairness ring hollow. Ring hollow, that is, because no transaction occurred whatsoever. It certainly makes sense, in light of the purpose underlying the bankruptcy code, to permit an unsuccessful bidder to appeal a consummated sale of Estate property on equitable grounds when there is evidence calling the propriety of the sale into question. However, there simply is no such evidence, here, nor a sale to begin with.

Spitz only argues that he was not given a sufficient opportunity to present evidence and raise arguments in favor of the sale. This, in the Court's view, is insufficient to confer standing on Spitz. Allowing every frustrated

bidder to appeal when *no sale occurs* would surely undermine the "person aggrieved" standard, which is grounded in the notion that if courts did not "limit who can appeal a bankruptcy court's order [,]…'bankruptcy litigation [would] become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order.'" *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1326 (11th Cir. 2014) (quoting *Kane*, 843 F.2d at 642); *see also In re Cult Awareness Network*, 151 F.3d 605, 608 (7th Cir. 1998) ("Courts consistently have noted a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate. This goal is achieved primarily by narrowly defining who has standing in a bankruptcy proceeding.") (citing *In re Richman*, 104 F.3d 654, 656-57 (4th Cir. 1997)).

And, even if the Court were to find that Spitz fell within this exception, his failure to object at the hearing dooms whatever remains of his argument. As the Seventh Circuit has stated, the "[p]rerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding." *In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992). While Spitz surely attended the bankruptcy court's hearing on all three motions discussed above, he uttered not a peep when the court made its rulings. Spitz's silence effectively waived any appeal challenging the wide discretion afforded to a bankruptcy court to conduct hearings as it sees fit.

Moreover, none of the cases the appellant cites actually support his argument that the bankruptcy court abused its discretion during the hearing; indeed, most of the cases have nothing to do with bankruptcy hearings at all. Spitz's arguments, in large part, merely exhibit his dissatisfaction with the procedure of the hearing and expresses his lamentation that he did not get a fair shake to plead his case; however, the hearing was not for the benefit of

Spitz as a potential purchaser, it was held, at bottom, to further the dual goals of swiftly administering the Debtors' Estate and providing the maximum recovery to unsecured creditors. While a party is certainly entitled to a fair trial, Spitz, as merely a frustrated bidder, was not entitled to a hearing; that is, of course, so long as the decisions the bankruptcy court made were within its discretion. And Spitz has fallen woefully short of showing that any decision of the bankruptcy court, during the hearing or otherwise, involved an abuse of discretion.

3. CONCLUSION

For all of the reasons noted above, the Court is obliged to dismiss this appeal because Spitz lacks standing to appeal the bankruptcy court's orders.[5]

Accordingly,

IT IS ORDERED that this appeal be and the same is hereby DISMISSED for lack of standing.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 14th day of April, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[5] It is also worth pointing out the main relief Spitz requests—that this Court vacate all three orders and remand this case to the bankruptcy court with instructions to approve the sale (Docket #4 at 16)—is relief this court likely cannot grant. *See In re Dockweiler*, 2014 WL 1273695, at *4 (noting no statutory authority for a court to order a Trustee to sell property of the Estate). And, it would be doubly odd for this Court to order the Trustee to sell the Aniwa Property to Spitz when the Trustee himself chose not to appeal the bankruptcy court's order denying his motion to sell. Additionally, granting such relief would arguably usurp the thrust of the bankruptcy statutory scheme, which "is to provide maximum flexibility to the trustee, subject to the oversight of those for whose benefit he acts, *i.e.*, the creditors of the estate." *In re NEPSCO,* 36 B.R. at 26.